IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID H. FLECK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI, )<br>)<br>Defendant. ) | Civil Action No. 21-75 |

ORDER

AND NOW, this 22nd day of April 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on July 26, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on June 30, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted insofar as he seeks remand to the Commissioner of Social Security ("Commissioner") for further proceedings as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**I.     Background**

Plaintiff applied for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act") on July 12, 2019. (R. 15). He later pursued his application before an Administrative Law Judge ("ALJ"). (*Id.*). The ALJ found Plaintiff to be not disabled under the Act and denied his application for benefits. (R. 25). Her decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review (R. 1). 20 C.F.R.

1

§ 404.981. Plaintiff now challenges that decision before the Court where his and Defendant's summary judgment motions are pending.

**II.     Standard of Review**

The ALJ's decision is subject to substantial evidence review. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Review is plenary as to legal issues. *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 776 (W.D. Pa. 2013). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (citation omitted). Reviewing courts look to the "record as a whole" to determine whether the decision is supported by such evidence. *Biller*, 962 F. Supp. 2d at 777. If the decision is so supported, then "the Commissioner's findings of fact . . . are conclusive." *Id.* (citations omitted). Reviewing courts may not reweigh evidence merely because they "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

The disability determination proceeds in a "five-step sequential analysis." *Biller*, 962 F. Supp. 2d at 776 (citing 20 C.F.R. §§ 404.1520, 416.920). Pursuant to the five-steps:

> The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, App'x. 1; (4) whether the claimant's impairments prevent [him or] her from performing past relevant work; and (5) if the claimant is incapable of performing [his or] her past relevant work, whether [he or] she can perform any other work which exists in the national economy.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)). At the fourth and fifth steps—where an ALJ assesses a claimant's ability to return to past relevant work or adjust to other appropriate work—the claimant's residual functional capacity ("RFC") is critical. RFC is the measure of a claimant's "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a

**regular and continuing** basis." SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It is largely determinative in finding whether functional limitations arising from a claimant's physical or mental impairments are work preclusive.

### III. The ALJ's Decision

In this matter, the ALJ determined that Plaintiff's date last insured ("DLI"), *i.e.*, the date he last met the Act's insured status requirements, was September 30, 2010. (R. 15, 17). Plaintiff, therefore, had to establish disability on or before that date. (*Id.*). At step one of the five-step analysis, the ALJ found Plaintiff had not done substantial gainful activity since his alleged onset date of June 1, 2008. (R. 17). Next, the ALJ found Plaintiff's severe, medically determinable impairments: "bilateral hip osteoarthritis with hip replacement surgery on December 10, 2007, and degenerative joint disease." (*Id.*). At this second step, the ALJ acknowledged that Plaintiff also had a "history of hernia repair," as well as gout and a cyst. (*Id.*). However, she excluded these from her step-two finding because they caused no more than minimal work-related limitations or occurred outside the relevant period of June 1, 2008 through September 30, 2010. (*Id.*).

Moving to step three, the ALJ asked whether Plaintiff had an impairment/combination of impairments that met the criteria of a presumptively disabling impairment at 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (R. 18). She "pa[id] particular attention to Listing 1.02" for Plaintiff's arthritis and hip replacement and "Listing 1.04" for Plaintiff's "lumbar spine." (*Id.*) Ultimately, however, she determined Plaintiff did not meet the criteria for those listed impairments.[1]

---

[1] She explained the criteria were not met because the record failed to show Plaintiff's cane was prescribed. (*Id.*). Further, "imaging studies [did] not show spinal cord compression or significant stenosis to explain [his] buttock pain" and radiculopathy had been ruled out as the source of the same. (*Id.*).

Accordingly, the ALJ set out to articulate Plaintiff's RFC.  To that end, she explained that she would first consider Plaintiff's symptoms to the extent that they could be reasonably associated with an "underlying medically determinable physical or mental impairment(s)." (*Id.*).  After that, she would consider the symptoms' "intensity, persistence, and limiting effects."  (R. 18—19).  Thus, the ALJ summarized Plaintiff's alleged symptoms: significant pain that he addressed with many medications and that interfered with his sitting, standing, walking, lying down, and sleeping; neuropathy in his feet that felt like burning; memory problems as a side effect of his pain medication; and needing to use a cane/bend over to see his feet when he walked because he could not feel them.  (R. 19).  Reflecting on these symptoms, the ALJ determined that while Plaintiff's medically determinable impairments could cause them, they did not affect Plaintiff as severely as he alleged.  (*Id.*).  She supported this finding by reference to the objective evidence of Plaintiff's treatment with Dr. Anthony DiGioia, Dr. Kevin Stanley, Dr. David Oliver Smith, Dr. Barbara Swan, Dr. Roger Componovo, and Dr. David Provenzano, as well as physical therapy records.  (R. 19—22).

For Dr. DiGioia, who performed Plaintiff's hip replacement,[2] the ALJ noted that the replacement had gone well but, after the procedure, Plaintiff developed "some pain in his right buttock that he described as severe and radiating down his leg." (R. 19).  X-rays showed that Plaintiff's "hip replacement hardware was appropriately placed and his incision was healing appropriately," so Dr. DiGioia referred Plaintiff to Dr. Stanley for a back evaluation to determine whether the pain was being caused by sciatica.  (R. 19—20).  When Plaintiff saw Dr. Stanley in February 2008, he complained of "numbness and tingling in his toes," "radiating pain down [his]

---

[2]   Plaintiff's x-rays before the hip replacement had shown "acetabular dysplasia bilaterally" and "pistol grip deformity in both hips, with the right hip being severe and the left having moderate degeneration." (R. 19).

4

right leg," "pain at the base of his incision that . . . occurred when he put weight on that leg," and "pain in his groin." (R. 20). Plaintiff was observed to be using a cane and walking with a slight limp. (*Id.*). He had some pain and tenderness but also intact hamstring and quadricep strength. (*Id.*). Ultimately Dr. Stanley determined that Plaintiff had a "lumbar strain and lumbar spine disease," with normal postoperative groin pain. (*Id.*). Plaintiff sought a secondary opinion from Dr. Oliver Smith in May 2008. (R. 21). At that time, Plaintiff reported "right buttock pain " (not radiating), some hip pain, and numbness and tingling in his toes. (*Id.*). Dr. Oliver Smith found no neurological abnormalities. (*Id.*). And while Plaintiff's MRI results showed "a chronic L2-3 protrusion producing mild stenosis," there was no "significant nerve root impingement." (*Id.*). Thus, Dr. Oliver Smith referred Plaintiff back to Dr. DiGioia. (*Id.*).

Around this same time, Plaintiff was seeing Dr. Swan for pain, and he was noted to "be taking five to six Vicodin daily." (R. 21). Dr. Swan helped Plaintiff manage his pain with medication (*id.*) and administered "a trochanteric injection and trigger point injections." (R. 20). At Plaintiff's one-year follow up appointment with Dr. DiGioia in November 2008, Dr. DiGioia reviewed Plaintiff's lumbar myelogram and indium bone scan of Plaintiff's lower back and hips. (*Id.*). He determined that the myelogram indeed showed "lumber degenerative disc disease" and recommended Plaintiff return to the back doctor for treatment. (*Id.*). Shortly thereafter, in early 2009, Plaintiff saw Dr. Componovo who noted an L4-5 herniation and referred Plaintiff for epidural steroid injection. (R. 22). Accordingly, Plaintiff reported to Dr. Provenzano at the Ohio Valley General Hospital Pain Center in March 2009. (*Id.*). Dr. Provenzano reviewed Plaintiff's history/imaging studies and noted his "point tenderness at the incision from his right hip replacement and at the right trochanteric bursa." (*Id.*). He further noted that these findings were inconsistent with lumbar radiculopathy though Plaintiff's EMG suggested L5-S1 radiculopathy.

(*Id.*). Dr. Provenzano administered a "transforaminal lumbar epidural steroid injection on the right side," but because it failed to produce the intended relief Dr. Provenzano ruled out radicular symptoms as the cause of pain and referred Plaintiff back to Dr. Componovo. (*Id.*).

Throughout this time, Plaintiff also tried physical therapy. (R. 21). Despite some difficulty with insurance coverage, Plaintiff was able to attend physical therapy at least twenty-five times after his surgery in 2007 before his discharge on February 19, 2008. (*Id.*). He later resumed treatment and was attending therapy in February 2009, at which time he reported some right gluteal pain but increased strength, flexibility, and muscle movement. (*Id.*).[3] Assessing all this evidence,[4] the ALJ acknowledged that Plaintiff made significant use of pain medication and went through a lot to find the source of his pain (R. 22), but she ultimately found Plaintiff was not as limited as he alleged because he could "use his right leg and hip for driving" just two weeks after his 2007 hip replacement. (R. 23). Therefore, she determined a "light work" RFC with modest limitations[5] was supported by the evidence and consistent with Plaintiff's successful hip replacement and "periodic reports that he felt he was getting stronger." (*Id.*). Although Plaintiff could not return to his work as a construction laborer with this RFC, the ALJ

---

[3] Plaintiff's record includes notes from physical therapy. For example, Plaintiff's physical therapy progress record from August 19, 2008, indicates that he "continue[d] to be frustrated" with "hip/back pain of unknown etiology." (R. 689). The therapist, Lisa Reichert, noted that Plaintiff presented as "somewhat weaker than on IE." (*Id.*).

[4] The ALJ noted that "no treating or examining physician submitted any opinion regarding the claimant's ability to perform work-related activity," so she had no such evidence to inform her RFC finding. (R. 23). She considered the state agency medical consultants' findings and found them "partially persuasive," but determined the materials submitted at the hearing had superseded their assessments of Plaintiff's impairment(s) during the relevant period. (*Id.*).

[5] The ALJ included in Plaintiff's RFC that he "would never be able to climb ladders, ropes or scaffolds;" and could only "occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl." (R. 18).

6

determined that he could adjust to other work. (R. 24). Therefore, she denied his DIB application. (*Id.*).

## IV. Legal Analysis

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence for several reasons, including that—at step two of the analysis—she failed to recognize *all* his severe, medically determinable impairments. Plaintiff acknowledges that such an error might have had no impact on his case had the ALJ included limitations arising from all his medically determinable impairments in his RFC regardless of their severity or lack thereof. But she failed to do so, argues Plaintiff, and as a result the RFC lacks accommodation for symptoms and limitations arising from his neuropathy, lumbar spinal stenosis, migraines, cluster headaches, and radiculopathy. Though Plaintiff's argument that further limitations should have been in his RFC is somewhat nonspecific, the Court finds that the ALJ failed to show that she considered all the relevant evidence and failed to adequately explain how she determined the RFC.[6]

Under the substantial evidence standard, the "threshold for . . . evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). If a finding is supported by such evidence, reviewing courts are not empowered to reconsider it. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). This standard, though deferential, is not hollow and ALJs making disability determinations: must ensure claimants' records are "full and fair" by developing records themselves if necessary,

---

[6] Because the Court agrees that the RFC is insufficiently supported, it need not reach Plaintiff's related argument that the ALJ's reliance on the testimony of the Vocational Expert ("VE") was misplaced.

7

*Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995);[7] must not overlook relevant evidence, *i.e.*, reject it "for no reason or for the wrong reason," *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981); and must be sufficiently thorough and clear in their decisions to "build an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citation omitted). If an ALJ's decision falls short in one of these respects, a reviewing court may not provide its own justification to uphold the decision. *Biller*, 962 F. Supp. 2d at 777 (citing *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947)) ("The court will not affirm a determination by substituting what it considers to be a proper basis.").

As Plaintiff acknowledges, his step-two argument only gives way to the possibility of remand if the ALJ failed to account for all his impairments—severe and non-severe—later in the RFC determination.[8] Therefore, the Court turns its attention to that more important question. ALJs must account for both severe and non-severe medically determinable physical and mental impairments in the RFC determination. SSR 96–8p, 1996 WL 374184, at *5. The RFC is only a

---

[7] If there is insufficient evidence to assess disability, ALJs can remedy that by soliciting consultative examination evidence. 20 C.F.R. § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). ALJs need not exercise that authority if they already have enough evidence to "reach a decision." *Sterrett v. Berryhill*, No. CV 17-63-E, 2018 WL 1400383, at *1 n.2 (W.D. Pa. Mar. 20, 2018) (citing 20 C.F.R. §§ 416.917, .919, .919a).

[8] For his step-two argument, Plaintiff argues that the ALJ "made no reference whatsoever to [his] neuropathy, migraines, chronic cluster headaches, spinal stenosis, or radiculopathy at Step 2." (Doc. No. 16, pg. 9). Unlike Plaintiff's hernia, gout, and cyst, the ALJ did not specifically address these alleged impairments at step two, and it is unclear from the decision whether she omitted them because she believed they were not medically determinable *or* because they were medically determinable but not severe. In any event, the ALJ decided step two in Plaintiff's favor (R. 17) and this Court has explained that "as long as a claim is not denied" at this threshold step, "it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe." *Kesler v. Comm'r of Soc. Sec.*, No. CIV.A. 14-1-E, 2015 WL 1444347, at *1 n.1 (W.D. Pa. Mar. 30, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007)).

true reflection of a claimant's maximum sustained work ability if all of his or her impairments are accounted for. *See* 20 C.F.R. § 404.1545(a)(1)—(2).

In this matter, the ALJ clearly considered evidence documenting Plaintiff's alleged lumbar back problems, neuropathy, radiculopathy, and headaches/migraines. In her consideration of the evidence toward Plaintiff's RFC, the ALJ was very thorough in her review of many of Plaintiff's medical records, including those that reflected these additional alleged impairments. However, it appears that she overlooked probative evidence post-dating the relevant period that reflected Plaintiff's condition during that time. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) (explaining that evidence that postdates the relevant period can be "corroborated by lay evidence relating back to the claimed period of disability" and, accordingly, "can support a finding of past impairment").

From the record and decision, it is evident the etiology of Plaintiff's pain was unclear throughout the relevant period. At first, Dr. DiGioia believed Plaintiff's pain was due to a lumbar spine problem (R. 19) and Dr. Stanley assessed Plaintiff with "lumbar strain and lumbar spine disease." (R. 20). But conflicting evidence emerged when Dr. Oliver Smith found no "significant nerve root impingement." (R. 21). And while Dr. Componovo found a disc herniation, the subsequent epidural steroid injection seemed to indicate that Plaintiff's lumbar spine was not the source of his pain. (R. 22).

Relevant to determining the origin of Plaintiff's pain *but not* discussed by the ALJ are 2015 and 2020 records from Plaintiff's orthopedist, Dr. Alan Klein. Therein, Dr. Klein explained that though Plaintiff had developed what was believed to be "an acute lumbar radiculopathy" after his hip surgery, the problem turned out to be a "distal fascial incision

9

dehisced" which Dr. Klein surgically repaired. (R. 460).[9] Because this evidence was relevant to the issue of Plaintiff's pain and the determination of appropriate limitations in the RFC, the Court will remand for its consideration.[10]

Not only that, but the Court will also order remand in this matter because of the tenuous connection between the ALJ's discussion of evidence and her RFC finding. The ALJ found Plaintiff's abilities were mostly accommodated by a "light work" RFC. (R. 18). Light work includes the ability to engage in a "good deal of walking or standing" or, alternatively, "sitting most of the time with some pushing and pulling of arm or leg controls." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing 20 C.F.R. § 404.1567(b)). A "good deal" of standing and walking means there is an expectation that the claimant can stand and walk "off and on" for about six hours in an eight-hour workday consistently. SSR 83-10, 1983 WL 31251, *6 (S.S.A. Jan. 1, 1983).

Plaintiff argues that such work is incompatible with limitations arising from his "neuropathy, back and leg pain, and the need for a cane" as well as notations in his record that his symptoms "tend to be aggravated by walking." (Doc. No. 16, pg. 13 (citing R. 673)). Regardless of whether Plaintiff is correct substantively, the Court finds that the ALJ failed to adequately explain how the evidence of record led her to determine that the RFC accurately

---

[9] That procedure is reflected in Dr. Klein's 2015 "Operative Details" notes where a "1.5 cm fascial defect" is included among Dr. Klein's findings. (R. 715). In Dr. Klein's "Preoperative Information," he described Plaintiff as having done "well for 2 weeks" after his 2007 hip surgery before he "developed exquisite pain in the area of his incision." (*Id.*). After years of pain management, Dr. Klein "could palpate a fascial defect" and repaired it. (*Id.*).

[10] The Court notes that evidence of a "condition that could reasonably produce pain" can corroborate a claimant's testimony regarding the pain itself. *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 494 (W.D. Pa. 2005) (citation omitted) (explaining there "need not be objective evidence of the pain itself"). Therefore, evidence of a condition that could cause pain is very relevant to the ALJ's assessment of the intensity, persistence, and limiting effects of Plaintiff's alleged pain.

reflected Plaintiff's maximum sustained work ability. The ALJ acknowledged Plaintiff's hip problems and generalized pain, including right-buttock and radiating pain, during the relevant period. (R. 19). Explaining how those problems factored into the RFC, the ALJ conveyed that she neither totally disbelieved Plaintiff's complaints of pain, nor found them to be a completely accurate reflection of his symptoms and limitations. Rather, she found that the objective medical evidence indicated he had greater abilities than he alleged. (R. 23).[11] The evidence she cited in support of that assessment indicated that it was difficult for Plaintiff's doctors to determine what was causing his pain.[12] His hip had seemed to heal nicely, and while he had legitimate lower back problems, they did not seem to be causing his pain.

While the Court can imagine that such evidence could undermine Plaintiff's claim by, *e.g.*, eroding the causal link between Plaintiff's alleged pain and a medically determinable impairment, it does not obviously support finding Plaintiff could stand and walk six hours daily. The ALJ did not cite any daily activities or medical evidence showing Plaintiff had that ability. Instead, the ALJ jumped from her disbelief of the full extent of Plaintiff's symptoms/limitations to the RFC determination. The ALJ's decision thus fails to provide a connection between her consideration of the evidence and the RFC finding. *See Cotter*, 642 F.2d at 705 (citation omitted) (explaining that an ALJ's findings "should be as comprehensive and analytical as feasible").

---

[11]     This sentiment was similarly expressed one more time in the decision when the ALJ explained that though "medically determinable impairments" could be the cause of Plaintiff's symptoms, his "statements concerning their intensity . . . and limiting effects" were not "entirely consistent with the medical evidence and other evidence in the record." (R. 19).

[12]     Though the cause of his pain was uncertain, the ALJ tacitly acknowledged by her analysis that Plaintiff sought lots of medical treatment to resolve it. When a claimant is "continually seeking relief for the pain," that can "lend[] credibility to his complaints." *Townsend v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 553 Fed. Appx. 166, 169 (3d Cir. 2014).

In the absence of an explicit connection, the Court might speculate that the ALJ's modest RFC limitations were meant only to address residual difficulty from Plaintiff's largely successful hip replacement and that any further limitations were rejected because they would have pertained to Plaintiff's not-quite-medically-determinable impairment(s). However, this Court may not affirm the agency's final decision based on that or any other speculative rationale. *Biller*, 962 F. Supp. 2d at 777; *Douthett v. Saul*, No. CV 19-885, 2020 WL 5077453, at *4 (W.D. Pa. Aug. 26, 2020). For all these reasons, remand is the most appropriate way to resolve this case. On remand it may be helpful to develop the record regarding the fascial defect that seemed to cause Plaintiff's pain, as well as regarding the functional limitations associated with that pain. As noted above, it is critical that Plaintiff's disability determination is based on a record that is "full and fair." *Ventura*, 55 F.3d at 902. However, the Court recognizes that Plaintiff's counsel represented to the ALJ that the record contained everything he could "get [his] hands on" (R. 36) and will leave it to the Commissioner to determine whether further development of the record is necessary on remand.[13]

## V. Conclusion

Based on the foregoing, the Court remands this matter to the Commissioner for further consideration of the evidence of record and a more specific articulation of how evidence in the

---

[13] While the Court has not herein spent significant time addressing Plaintiff's argument that the ALJ neglected to address his chronic headaches, migraines, or memory loss, the Court's remand is broad enough for Plaintiff to present his arguments pertaining thereto to the Commissioner. It is unclear what, if any, functional limitations might have arisen from these alleged impairments, especially Plaintiff's headaches and migraines. Remand would not have been appropriate based on the ALJ's treatment of those alleged impairments alone. *See Champagne v. Comm'r of Soc. Sec.*, No. CV 18-329, 2019 WL 1429669, at *1 n.1 (W.D. Pa. Mar. 29, 2019) (explaining that where Plaintiff did "not suggest specifically what additional functional limitations should have been included in the RFC to account for her headaches that were not already included," there was no deficiency of evidence that would justify remand).

record supports the RFC finding.  The Court will not go so far as to reverse the ALJ's decision for a grant of benefits.  Plaintiff has not endured a severe delay in this matter nor are there any egregious errors in the agency's decision.  *See Smith v. Califano*, 637 F.2d 968, 972 n.1 (3d Cir. 1981).  Remand will provide Plaintiff with an adequate opportunity to show the full extent of limitations arising from his medically determinable impairments during the relevant period.

s/ Alan N. Bloch
United States District Judge

ecf:    Counsel of Record